

> Signed/Docketed
> August 29, 2012

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

In re: )
)  Case No. 11-36558 MER
CURTIS WAYNE RICHTER )
)  Chapter 13
Debtor. )

## ORDER

THIS MATTER comes before the Court on the following:

- *Verified Motion to Disallow Proof of Claim 3-1* (Docket No. 39) and *Verified Motion to Disallow Proof of Claim 9-1* (Docket No. 47) (collectively, the "Verified Motions") filed by debtor Curtis Wayne Richter ("Debtor") on April 18, 2012;[1]

- *Trustee's Response to Verified Motion to Disallow Proof of Claim No. 3-1* (Docket No. 50) and *Trustee's Response to Verified Motion to Disallow Proof of Claim No. 9-1* (Docket No. 54) (collectively, the "Responses") filed by Douglas B. Kiel, the standing Chapter 13 trustee ("Trustee") on May 11, 2012;

- *Reply to Trustee's Response to Verified Motions to Disallow Proof of Claim Nos. 3-1 and 9-1* (Docket No. 56) ("Reply") filed by the Debtor on May 14, 2012;[2]

- *Trustee's Supplemental Response to Verified Motion to Disallow Proof of Claim No. 3-1 and Request for Hearing* (Docket No. 84)

---

[1]  The Debtor also filed separate Verified Motions seeking to disallow Proof of Claim 1-1(Docket No. 37), Proof of Claim 4-1 (Docket No. 41), Proof of Claim No. 5-1 (Docket No. 43), and Proof of Claim No. 8-1 (Docket No. 45), and the Trustee filed responses to each Verified Motion. However, three of those Verified Motions were withdrawn on May 15, 2012 (Docket Nos. 57, 58 and 59), and the Court entered an Order Granting Motion to Disallow Proof of Claim No. 8-1 (Docket No. 80) on July 27, 2012.  Accordingly, those Verified Motions are not subject to this Order.

[2]  The Debtor filed a single reply to the Trustee's six responses to the Debtor's six Verified Motions.  As explained in footnote 1, *supra*, the disputes regarding the allowance of Claim Nos. 1-1, 4-1, 5-1 and 8-1 have been resolved.  Therefore, the Court will consider the Debtor's Reply with respect to only the Verified Motions for Proof of Claim Nos. 3-1 and 9-1.

("Claim 3-1 Supplemental Response") filed by the Trustee on
August 2, 2012;

● *Trustee's Supplemental Response to Verified Motion to Disallow
Proof of Claim No. 9-1 and Request for Hearing* (Docket No. 83)
("Claim 9-1 Supplemental Response") filed by the Trustee on
August 2, 2012; and

● *Debtor's Motion to Strike* (Docket No. 85) filed by the Debtor on
August 2, 2012.

The Court has reviewed the pleadings and the pertinent statutory and case law,
and finds and concludes as follows.

## PROCEDURAL HISTORY

On November 11, 2011, the Debtor filed for relief under Chapter 13 of
Title 11 of the United States Code (the "Bankruptcy Code"). The first date set
for the meeting of creditors pursuant to 11 U.S.C. § 362(a)[3] was December 27,
2011, and the meeting was held and concluded on that date. In accordance
with FED. R. BANKR. P. 3002(c), the deadline for non-governmental units to file
proofs of claim in this case was March 26, 2012 ("Claims Bar Date"), or ninety
days after the first date set for the meeting of creditors. On May 30, 2012, the
Court entered its Order confirming the Debtor's Amended Chapter 13 Plan.[4]

The Debtor's Schedule F lists an undisputed debt to "Citi" in the amount of
$6,764.00 for a "credit card account opened 7/95" for an account ending in
"3013."[5] On January 3, 2012, Oak Harbor Capital III, LLC ("Oak Harbor") timely
filed Proof of Claim No. 3-1 for an unsecured claim in the amount of $6,938.73
in connection with a credit card ending in "3013."[6] Oak Harbor attached a one
page "Account Summary" to Proof of Claim No. 3-1 identifying "CitiBank" as the

---

[3] Unless otherwise noted, all future statutory references in the text are to Title 11 of
the United States Code.

[4] Order Confirming Amended Chapter 13 Plan (Docket No. 63). The Amended
Chapter 13 Plan provides for a distribution to Class Four unsecured claims in the total
amount of $68,635, and states: "Class Four claims are of one class and all timely filed
unsecured non-523(a)(8) claims shall be paid 100%."

[5] Debtor's Schedule F (Docket No. 1).

[6] Proof of Claim No. 3-1.

card issuer and Oak Harbor as the creditor.[7]  Proof of Claim No. 3-1 is silent as to any transfer or assignment of the debt to Oak Harbor, and no other documentation was attached to the proof of claim.

The Debtor's Schedule F also lists an undisputed debt to "Bb And B/cbna" in the amount of $1,764.00 for a "Credit card account opened 6/07" for an account ending in "2243."[8]   On March 5, 2012, Portfolio Recovery Associates, LLC, successor in interest to Citibank, N.A. (Bailey, Banks & Biddle) by PRA Receivables Management, LLC, agent" ("Portfolio Recovery") timely filed Proof of Claim 9-1 for an unsecured claim in the amount of $1,845.03 in connection with a credit card ending in "2243."[9]  Portfolio Recovery attached a one page "Account Summary" to Proof of Claim 9-1, asserting the original creditor was Bailey, Banks & Biddle, the account was purchased from CitiBank, N.A. on January 5, 2012, and the current account owner is Portfolio Recovery.[10]  Also attached to Proof of Claim No. 9-1 is a one page Limited Power of Attorney between Portfolio Recovery and its designated attorney-in-fact, PRA Receivables Management, LLC.  No other documentation was attached to the proof of claim.

The Debtor's Verified Motions seek disallowance of the two proofs of claim on two grounds: 1) the claims should be disallowed under *In re Kirkland*[11] because each claim is based upon a writing (a credit card agreement), but the entity filing the claim failed to provide an original or duplicate of the writing and failed to provide a statement of circumstances surrounding loss or destruction of the writing supporting its debt; and 2) the claims should be disallowed because the claimants failed to attach copies of an assignment and lack standing to file the claims, as required under FED. R. CIV. P. 17.[12]  The Debtor asserts the entities filing the claims only provided an account summary "created by the entity that filed the claim, not the original creditor in violation of Fed.R.Bankr.P. 3001(c)."[13]

---

[7]  *See id.*

[8]  Debtor's Schedule F (Docket No. 1).

[9]  Proof of Claim No. 9-1.

[10]  *See id.*

[11]  *Caplan v. B-Line, LLC (In re Kirkland)*, 572 F.3d 838 (10th Cir. 2009).

[12]  FED. R. CIV. P. 17 is made applicable to this contested matter by FED. R. BANKR. P. 9014(c).

[13]  Verified Motions (Docket Nos. 39 and 47), at ¶ 8.

In the Responses, the Trustee argues after *In re Reynolds*,[14] objections to claims based on lack of documentation should not be upheld and the Debtor's reliance on *Kirkland* is misguided.[15]  The Trustee contends under "*Reynolds* the remedy for non-compliance with F.R.B.P. 3001(c)(2)(D) is not disallowance of the claim.  The claim objected to . . . should be allowed."[16]  The Trustee's Responses point to the similarity of the proofs of claim to the claims listed on the Debtor's Schedule F.  In the Responses, the Trustee did not address issues of standing for Oak Harbor or Portfolio Recovery.

The Debtor's Reply argues the Trustee does not have standing to object to the Debtor's Verified Motions because such an objection to disallowance of unsecured claims falls outside the scope of § 1302(b).  The Debtor also argues *Reynolds* is not binding precedent on this Court because it was entered in a different division.

On May 21, 2012, the Court entered its Order to Show Cause, finding "the [Verified Motions], on their faces, are improper under the rationale set forth in *Reynolds* . . . . The Court agrees with and hereby adopts the analysis and holding in *Reynolds*."[17]  The Court ordered the Debtor to respond showing why the Verified Motions should not be dismissed in light of *Reynolds*.[18]  The Debtor timely filed his Response to the Order to Show Cause, in satisfaction of that Order, arguing the Debtor did object to the lack of documentation under *Kirkland*, but also made a substantive objection under § 502(b) by challenging the standing of Oak Harbor and Portfolio Recovery as the real parties in interest.[19]

On July 12, 2012, the Court held a preliminary hearing on the Verified Motions and the Responses.  Under the plain language of § 1302(b)(3), the Court determined a Chapter 13 trustee has standing to oppose a debtor's objections to proofs of claim when appropriate, pursuant to FED. R. BANKR. P. 3007 and Local Bankruptcy Rule 3007-1(a).[20]  Based on the representations and

---

[14]  *In re Reynolds*, 470 B.R. 138 (Bankr. D. Colo. 2012).

[15]  Responses (Docket Nos. 50 and 54), at ¶ 2.

[16]  *Id.* at ¶ 5.

[17]  Order to Show Cause (Docket No. 60).

[18]  *Id.*

[19]  *See* Debtor's Response to May 21, 2012 Order (Docket No. 65).

[20]  With respect to a Chapter 13 trustee's standing to respond to a debtor's motion to disallow claims, this Court relied on a decision from the U.S. Court of Appeals for the Second

arguments of counsel on the record, the Court found, on the facts of this case, the Trustee has standing to file the Responses to the Verified Motions.[21] However, the Court noted the instant dispute is unusual because the Trustee, rather than the actual claimants, objected to the Debtor's Verified Motions and is asserting a defense on behalf of the claimants.

_____

Circuit.  As a matter of first impression, the Second Circuit held a Chapter 13 trustee had standing to object to a debtor's motion to reclassify a secured creditor's claim from secured to unsecured.  *In re Overbaugh*, 559 F.3d 125, 129-30 (2d Cir. 2009).  The *Overbaugh* Court applied the following reasoning:

> . . . in light of the statutory requirement that a trustee properly disburse all claims, *see* 11 U.S.C. § 1302(b)(3), a trustee has standing to object to the motion of a debtor to reclassify a secured creditor's claims. Because a trustee must be able to verify that secured claims are, in fact, secured, it necessarily follows that a trustee has standing to object when a debtor attempts to reclassify a secured claim as an unsecured claim. In reaching this result, we join two other circuits that have concluded, when considering similar challenges to the authority of a Chapter 13 trustee, that "the primary purpose of the Chapter 13 trustee is not just to serve the interests of the unsecured creditors, but rather, to serve the interests of all creditors." *In re Andrews*, 49 F.3d 1404, 1407 (9th Cir.1995) (citing *In re Maddox*, 15 F.3d 1347, 1355 (5th Cir.1994) ("[T]he [C]hapter 13 trustee serves the interests of all creditors . . . .)).

> In addition, we agree with the commonsensical observation of the bankruptcy judge that Rule 3007 of the Federal Rules of Bankruptcy Procedure supports this conclusion; it would make little sense to require parties to notify a trustee that they objected to a claim if the trustee did not have standing to oppose or support that objection. For these reasons, we agree with both the bankruptcy judge and the District Court that the Trustee in this case had standing to object to plaintiffs' motion to reclassify [the creditor's] secured claim.

[21]   In this case, with a 100% distribution to allowed claims of unsecured creditors under the confirmed Amended Chapter 13 Plan, the Court found the Trustee had standing. The Court recognizes its conclusion in this case would be different in cases where a plan provides for a pro rata distribution to unsecured creditors.  In such cases, a trustee would need to establish a response to a motion to disallow an unsecured claim serves the interests of all creditors because allowing additional unsecured claims may dilute the pool of unsecured creditors entitled to a distribution under the plan.  *See* § 1302; *see also Smith v. Rockett*, 522 F.3d 1080, 1085 (10th Cir. 2008) (J. O'Brien dissenting):

> In a Chapter 13 case the trustee is the principle administrator of the estate serving "the interests of all creditors primarily by collecting payments from debtors and disbursing them to creditors." *In re Maddox*, 15 F.3d 1347, 1355 (5th Cir.1994). 11 U.S.C. § 1302 "grants the [C]hapter 13 trustee various powers to ensure that such collections and disbursements occur equitably, according to the dictates of Congress." *Id*.

During the hearing, counsel for the Trustee, recognizing the difficult task of producing evidence that Oak Harbor and Portfolio Recovery are the real parties in interest, proposed to file motions for orders to show cause forcing the claimants to join this contested matter and provide documentation evidencing the standing of each claimant.  Counsel for the Trustee advised the Court the Trustee would either file a motion requesting orders to show cause with authority, or if the Trustee concluded there is no authority the Trustee would withdraw the Responses.  The Court ordered "prior to the Court scheduling an evidentiary hearing on the remaining issues between the parties, the Court determines the Trustee shall have up to and including August 2, 2012 to file either a motion requesting orders to show cause with supporting legal authority, or notices of withdrawal of the Trustee's respective responses to the Debtor's Verified Motions."[22]

The Trustee did not file either of these pleadings.  Rather, on August 2, 2012, the Trustee filed the Claim 3-1 Supplemental Response and the Claim 9-1 Supplemental Response.  With respect to Proof of Claim No. 3-1, the Trustee reiterated the arguments in his original Response regarding *Reynolds*, and added FED. R. BANKR. P. 3001 controls the determination on the validity of a claim and the rule does not require proof of assignment of the claim.[23]  In addition, the Trustee requested "an evidentiary hearing to ascertain whether substantive grounds exist to disallow creditor, [Oak Harbor's] claim, and to allow the creditor a last opportunity to appear to defend its claim."[24]  Although not directly stated in the Claim 3-1 Supplemental Response, the Trustee essentially seeks a hearing to determine whether the Debtor's challenge to Oak Harbor's standing constitutes "substantive grounds" under § 502(b).[25]  In response to this pleading, the Debtor filed his Motion to Strike.

With respect to Proof of Claim No. 9-1, the Trustee repeated the arguments in his original Response regarding *Reynolds*, and further asserted Portfolio Recovery had amended Claim No. 9-1 and attached certain documentation evidencing the ownership of the debt and post-petition assignment from Citibank, N.A. to Portfolio Recovery.[26]  Upon review of claims register in this case, the Court takes judicial notice Portfolio Recovery filed Amended Proof of Claim 9-2 on August 1, 2012 with, additional documentation

---

[22] Minutes of Proceeding (Docket No. 75).

[23] Claim 3-1 Supplemental Response (Docket No. 84), at ¶ 3.

[24] *Id.* at ¶ 8.

[25] *See id.*

[26] Claim 9-1 Supplemental Response (Docket No. 83), at ¶ 3.

attached.  The Trustee argues "[t]he amendments made to the proof of claim render all of the debtor's objections to the claim moot."[27]  The Trustee also requested this Court set "an evidentiary hearing to ascertain whether substantive grounds exist to disallow creditor, Oak Harbor Capitol III, LLC's [sic] claim, and to allow the creditor a last opportunity to appear to defend its claim."[28]  The Debtor did not respond to this pleading.

## DISCUSSION

When an individual debtor files for protection under the Bankruptcy Code, the debtor's creditors are entitled to file proofs of claim.[29]    The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief[,]"[30] and defines a "claim" as a "right to payment . . . ."[31]  FED. R. BANKR. P. 3001(a) provides "[a] proof of claim is a written statement setting forth a creditor's claim.  A proof of claim shall conform substantially to the appropriate Official Form."[32]  Official Form 10 requires a claimant to attach supporting documentation to the proof of claim. FED. R. BANKR. P. 3001(c)(1) addresses the requirement of supporting information for claims based upon a writing, stating:

> When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.[33]

Oak Harbor and Portfolio Recovery each filed proofs of claim in the Debtor's Chapter 13 bankruptcy case purporting to be entities holding unsecured claims against the Debtor.  This dispute centers on whether Oak Harbor and Portfolio Recovery, as the alleged assignees of the original creditors, are the real parties in interest holding claims against the Debtor.  Although

---

[27] Claim 9-1 Supplemental Response (Docket No. 83), at ¶ 5.

[28] *Id.* at ¶ 11.

[29] § 501(a); *see also Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U .S. 443, 449 (2007).

[30] § 101(10)(A).

[31] § 101(5)(A).

[32] FED. R. BANKR. P. 3001(a).

[33] FED. R. BANKR. P. 3001(c)(1).

many courts have addressed this issue, the instant matter is unique because the Court is charged with resolving these claims objections between the Debtor and the Trustee, not between the Debtor and the actual claimants.  The Court is troubled by the Trustee's request to give Oak Harbor and Portfolio Recovery a "second bite of the apple" to defend their respective claims, despite their failure to respond to the Verified Motions.

Thus, as a matter of law, the issues before the Court with respect to the Debtor's pending Verified Motions are as follows:

1) whether Portfolio Recovery was entitled to amend Proof of Claim No. 9-1 after the Claims Bar Date;

2) assuming Portfolio Recovery was entitled to amend its proof of claim, whether Amended Proof of Claim 9-2 is entitled to the presumption of *prima facie* validity which arises from a properly filed claim, and whether the documents attached to the amended claim moot the Debtor's Verified Motion to Disallow Proof of Claim 9-1;

3) whether Proof of Claim No. 3-1 is entitled to the presumption of *prima facie* validity which arises from a properly filed claim, and if so, whether the Debtor met his burden of rebutting the presumption of validity, thereby shifting the burden to the Trustee as the only party responding to the Verified Motion;

4) whether the Debtor's objection based on lack of documentation and standing is proper in light of the recent *In re Reynolds*[34] opinion adopted by this Court; and

5) whether an evidentiary hearing is necessary to determine whether the Trustee can meet the ultimate burden of proving by a preponderance of the evidence that either claimant is entitled to payment under the filed proofs of claim, and if so, whether evidentiary sanctions against the Trustee are appropriate.

## A.    Proof of Claim No. 9-1 May Be Amended By Portfolio Recovery.

It is undisputed Portfolio Recovery timely filed Proof of Claim No. 9-1 before expiration of the Claims Bar Date, so the timeliness requirement of FED R. BANKR. P. 3002(c) has been satisfied.  However, the Court must determine whether Portfolio Recovery was entitled to amend its claim after expiration of the Claims Bar Date.

---

[34] *In re Reynolds*, 470 B.R. 138 (Bankr. D. Colo. 2012).

A proof of claim is considered amendable as a matter of law if the amended proof of claim meets the following standard articulated by the United States Court of Appeals for the Tenth Circuit:

> Ordinarily, amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable.  The court should not allow truly new claims to proceed under the guise of amendment.[35]

In other words, if the substance of the original proof of claim remains unchanged by an amended proof of claim, the amendment should be permitted.[36]  The determination to allow an amendment to a timely filed proof of claim "is an equitable determination left to the discretion of the bankruptcy court."[37]

Here, Proof of Claim 9-1 was filed as an unsecured claim in the amount of $1,845.03 in connection with a credit card ending in "2243."[38]  On August 1, 2012, Portfolio Recovery filed Amended Proof of Claim 9-2, as an unsecured claim in the amount of $1,845.03 in connection with a credit card ending in "2243."[39]  Both claims indicate the Debtor may have scheduled the account as "Bailey, Banks & Biddle."[40]  Portfolio Recovery did not claim any new right to payment from the Debtor *vis-a-vis* Amended Proof of Claim 9-2 because the existence, nature and amount set forth in Amended Proof of Claim 9-2 are

---

[35]  *In re Unioil, Inc.*, 962 F.2d 988. 992 (10th Cir. 1992) (permitting the amendment of a proof of claim where a creditor/trustee (rather than the trust) was incorrectly listed as the creditor on the original proof of claim).

[36]  *See id.*; *see also In re Hemingway Transp.*, 954 F.2d 1, 10 (1st Cir. 1992) (stating "[a]mendments to proofs of claim timely filed are to be freely allowed, whether for purposes of particularizing the amount due under a previously-asserted right to payment, or simply to cure technical defects in the original proof of claim. *See, e.g., In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 816-17 (9th Cir. 1985). If allowed, of course, the amendment relates back to the filing of the original proof of claim. *Id.*").

[37]  4 Collier on Bankruptcy ¶ 501.02[4] (16th ed. 2012) (citing *In re Hemingway Transp.*, 954 F.2d 1, 10 (1st Cir. 1992), which states "[t]he equitable determination to allow or disallow an amendment to a proof of claim timely filed is entrusted to the sound discretion of the bankruptcy court.").

[38]  Proof of Claim No. 9-1.

[39]  Amended Proof of Claim No. 9-2.

[40]  *Compare* Proof of Claim No. 9-1, *with* Amended Proof of Claim No. 9-2.

identical to the information provided in the original Proof of Claim 9-1. Accordingly, the Court finds the substantive content of Proof of Claim No. 9-1 was unaltered by Amended Proof of Claim 9-2.

Further, as in *Unioil*, the Debtor does not dispute Proof of Claim No. 9-1 was deficient in any of these respects or that Amended Proof of Claim 9-2 altered the substantive content of the claim. Therefore, as a matter of law, the Court concludes Proof of Claim No. 9-1 was amendable, and Amended Proof of Claim 9-2 relates back to the date of filing of the original proof of claim. Based on this determination, Amended Proof of Claim 9-2 is the operative proof of claim at issue for Portfolio Recovery.

**B.   Amended Proof of Claim 9-2 Constitutes Prima Facie Evidence of the Validity and Amount of the Claim Asserted, but Proof of Claim 3-1 Does Not.**

    *1.   Validity of Proofs of Claim and Burden Shifting.*

Once a proof of claim has been filed under § 501, the claim "is deemed allowed, unless a party in interest objects."[41]  When the proof of claim is executed and filed in accordance with FED. R. BANKR. P. 3001 (including Official Form 10),[42] the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim.[43]  If a proof of claim is not filed in accordance with the Federal Rules of Bankruptcy Procedure, the claimant does not benefit from the presumption of validity and amount of the claim, and the claimant has "the initial burden of proving that a claim exists and the amount of the claim."[44]

When the presumption of validity is present and a party in interest files an objection to the allowance of a claim, the well-established burdens of proof are as follows:

---

[41]  § 502(a); *Harrison*, 987 F.2d 677, 680 (10th Cir. 1993) (citing *In re Padget*, 119 B.R. 793, 797 (Bankr. D. Colo. 1990)).  In Chapter 13 cases, only "allowed" claims are entitled to participate in a distribution under a plan.  4 Collier on Bankruptcy ¶ 501.01[2][b] (16th ed. 2012) (citing FED.R.BANKR.P. 3021).

[42]  FED. R. BANKR. P. 3001(a)

[43]  FED. R. BANKR. P. 3001(f) (stating "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."); *In re Harrison*, 987 F.2d 677, 680 (10th Cir. 1993).

[44]  *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140, 145 (10th Cir. BAP 2003).

The objecting party has the burden of going forward with evidence supporting the objection. *See Abboud v. Abboud (In re Abboud)*, 232 B.R. 793, 796 (Bankr. N.D. Okla.), *aff'd*, 237 B.R. 777 (10th Cir. BAP 1999). Such evidence must be of probative force equal to that of the allegations contained in the proof of claim. *See id.* However, an objection raising only legal issues is sufficient. *See In re Lenz*, 110 B.R. 523, 525 (D. Colo. 1990). Once the objecting party has reached this threshold, the creditor [claimant] has the ultimate burden of persuasion as to the validity and amount of the claim. *See In re Harrison*, 987 F.2d 677, 680 (10th Cir. 1993).[45]

If the party seeking disallowance of a claim based on a writing raises a substantive objection under § 502(b) and presents sufficient evidence to refute at least one of the elements essential to the claim's sufficiency, the burden of proof shifts back to the claimant to prove claimant has a valid claim against the debtor.[46]

   2.   *Required Attachments For Assigned Claims Based on Credit Card Debt*

This Court must decide whether Proof of Claim No. 3-1 and Amended Proof of Claim No. 9-2 substantially conformed to Official Form 10. If so, the proofs of claim serve as *prima facie* evidence of the validity and amount of the claims against the Debtor and the burden of production shifts to the Debtor to dispute the validity and amount of the claims. If not, then the proofs of claim are deprived of the presumption and the burden of persuasion remains with Oak Harbor and Portfolio Recovery to prove the validity and amount of their respective claims.

Proof of Claim No. 3-1 and Amended Proof of Claim No. 9-2 each represent the claims are based on credit card debts incurred by the Debtor, and Oak Harbor and Portfolio Recovery are not the original issuers of the credit card accounts. The terms of an agreement between a credit card holder and a credit

---

   [45]   *Id.* (quoting *Geneva Steel*, 260 B.R. at 524; *accord In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir. 1992) (To overcome the *prima facie* effect of a properly filed proof of claim, "the objecting party must bring forward evidence equal in probative force to that underlying the proof of claim, [and only] then is the ultimate burden of persuasion with the proponent of the proof of claim."), *abrogated on other grounds, Raleigh v. Illinois Dept. of Rev.*, 530 U.S. 15 (2000)).

   [46]   *Id.* at 147.

card issuer must be set forth in writing.[47]  Therefore, these transferred claims are based on the underlying account documents **and** additional assignment documents.

In order to comply with FED. R. BANKR. P. 3001(c) and Official Form 10, Oak Harbor and Portfolio Recovery were required to attach supporting documents to the respective claims or a statement of circumstances regarding the loss or destruction of supporting documents.  Courts previously struggled with whether an account summary could be attached to a proof of claim in lieu of the voluminous credit card transaction documents supporting the claim; however the instructions on the current applicable version of Official Form 10 make clear a summary is not a substitute for the requirement to attach documents evidencing the debt.[48]

For assigned (or transferred) claims based on credit card debt, the remaining issue is what documentation, if any, must be attached to the proof of claim.  Although this issue has been discussed in courts across the country, the Tenth Circuit Court of Appeals has yet to address it.  As a starting point, FED R. BANKR. P. 3001(e)(1) establishes the procedure for filing claims transferred before a proof of claim is filed, and states as follows:

(1) Transfer of claim other than for security before proof filed

If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.[49]

---

[47]  *In re Kendall*, 380 B.R. 37, 45 (Bankr. N.D. Okla. 2007) (taking judicial notice the terms of a credit card agreement are set forth in writing, and stating "[t]he complexity of the relationship between a cardholder and card issuer requires that all of these variables be agreed to in a writing or writings, and federal law requires that consumer cardholders be given written disclosure of these terms. *See* 15 U.S.C. § 1637; 12 C.F.R. § 226.5a.").

[48]  Official Form 10 (12/11) states "[a]ttach redacted copies of any documents that show the debt exists and a lien secures the debt. . . You may also attach a summary in addition to the documents themselves."; *see also In re Reynolds*, 470 B.R. 138, n.1 (Bankr. D. Colo. 2012).

[49]  FED R. BANKR. P. 3001(e)(1).  The Advisory Committee Note explains the minimum requirements for a transferee to file a proof of claim:

The interests of sound administration are served by requiring the post-petition transferee to file with the proof of claim a statement of the transferor acknowledging the transfer and the consideration for the transfer.  Such a disclosure will assist the court in dealing with evils that may arise out of post-bankruptcy traffic in claims against an estate.  *Monroe v. Scofield*, 135 F.2d

This rule clearly requires a transferred claim must be filed by the transferee, if a proof of claim has not yet been filed.

However, the question remains: Must an assignee attach documentation evidencing the assignee is the holder of the transferred claim?  "Bankruptcy Courts are 'split on the documentation required of an assignee to establish a *prima facie* case' under Rule 3001(f)."[50]  Some courts require no documentation of assignments,[51] relying primarily on Rule 3001(e) and its omission if the language set forth in subsection (e)(2) requiring "evidence of the transfer shall be filed by the transferee."[52]  Other courts require transferees to attach the actual transfer documents to their claims.[53]

Finally, some courts take the middle road, reading Rule 3001(e)(1) as establishing only who may file a transferred claim, not what documentation needs to be attached to a proof of claim.[54]  However, these courts require attachment of some documentation for the claim assignment.[55]  As the U.S. Bankruptcy Court for the Eastern District of Pennsylvania reasoned:

725 (10th Cir. 1943); *In re Philadelphia & Western Ry.*, 64 F.Supp. 738 (E.D.Pa.1946); *cf. In re Latham Lithographic Corp.*, 107 F.2d 749 (2d Cir. 1939). Both paragraphs (1) and (3) of this subdivision, which deal with a transfer before the filing of a proof of claim, recognize that the transferee may be unable to obtain the required statement from the transferor, but in that event a sound reason for such inability must accompany the proof of claim filed by the transferee.

[50] *In re O'Brien*, 440 B.R. 654, 661 (Bankr. E.D. Pa. 2010) (quoting *In re Minbatiwalla*, 424 B.R. 104, 113 (Bankr. S.D.N.Y. 2010)).

[51] *See In re Relford*, 323 B.R. 669 (Bankr. S.D. Ind. 2005); *In re Cox*, 2007 WL 4219407, at *4 (Bankr. W.D. Tex. 2007).

[52] FED R. BANKR. P. 3001(e)(2).

[53] *See In re Hughes*, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004) ("In the event the claimant is an assignee of a debtor's original creditor, a claimant must attach a signed copy of the assignment and sufficient information to identify the original credit card account."); *In re Armstrong*, 320 B.R. 97, 106 (Bankr. N.D. Tex. 2005) ("The transferee has an obligation under Bankruptcy Rule 3001 to document its ownership of the claim.").

[54] *In re Pursley*, 451 B.R. 213, 225 (Bankr. M.D. Ga. 2011) (sustaining the debtors' objections to proofs of claim filed by assignee claimants); *see also In re O'Brien*, 440 B.R. at 662 (stating to satisfy FED. R. BANKR. P. 3001(c), "as assignee filing a proof of claim must attach the written assignment or set forth a summary of the document."); *In re Kincaid*, 388 B.R. 610 (Bankr. E.D. Pa. 2008).

[55] *See id*.

It is counterintuitive to conclude that an assignee has less of a burden to establish its claim than a direct creditor. Rule 3001(e)(3) [sic] has a purpose separate and apart from the establishment of a claim. It is intended to make clear that disputed prepetition claim transfers are not an issue for the court's concern. That is not the point of requiring evidence of ownership for claims allowance. By demanding the identification of the owner of a claim to ensure the Debtor has an obligation to pay that creditor and, in exchange will receive a discharge of its debt, Debtor is not seeking to challenge the transfer but merely to confirm that one has taken place.[56]

Here, the Trustee argues assignment documentation is needed because "Rule 3001(e)(1) *does not* require proof of assignment of the claim."[57] While the Rule is silent on this issue, the Court disagrees with the Trustee and remains persuaded by the logic employed by other bankruptcy courts requiring some documentation, either assignment documents or a summary of the transfer and chain of assignment, for any assigned claims based on credit card debt. "Under such a rule, '[a] proof of claim that attempts to satisfy 3001(c) by providing a summary rather than attaching the assignment documents must describe the chain of title leading to the assignee in detail and in a clear and coherent manner.'"[58] Therefore, the Court concludes Oak Harbor and Portfolio Recovery were required to attach to their proofs of claim at least some documentation evidencing the assignment of the underlying claims.

3.    *Proof of Claim No. 3-1 is Not Entitled to the Presumption of Validity and Amount of the Claim*

Official Form 10 required Oak Harbor to attach "copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements." Oak Harbor only attached a one page account summary of the alleged fees and charges owed by the Debtor, indicating the issuer of the account was "CitiBank." However, Oak Harbor did not provide any explanation or any documents to  demonstrate Citibank transferred or assigned the claim to Oak Harbor. In fact, other than a summery page, Oak Harbor did not attach a single document to the proof of claim, leaving this Court with no means to assess the validity of the claim.

---

[56] *In re Kincaid*, 388 B.R. at 616-17.

[57] Claim 3-1 Supplemental Response (Docket No. 84), at ¶ 3.

[58] *In re Pursley*, 451 B.R. at 226 (quoting *In re O'Brien*, 440 B.R. at 663).

As a result, the Court finds Proof of Claim No. 3-1 was not properly filed in compliance with the requirement stated in Rule 3001(c)(1) to attach the writing upon which the claim is based.  Therefore, Oak Harbor may not rely on Proof of Claim No. 3-1 as *prima facie* evidence of the validity or amount of its alleged claim against the Debtor.[59]  The burden of persuasion remains with Oak Harbor to prove the validity and amount of its claim by a preponderance of the evidence.

> 4.    *Amended Proof of Claim No. 9-2 is Entitled to the Presumption of Validity and Amount of the Claim*

Amended Proof of Claim 9-2 is the controlling claim for Portfolio Recovery, and Portfolio Recovery attached the following documents to this claim:

1)  Citibank, N.A. Account Statements addressed to the Debtor for the account at issue ending in "2243" covering the period from November 2011 through January 2012, stating "[t]his Account is Issued by Citibank, N.A." and demonstrating during the time prior to the Petition Date through January 2012 the account was serviced by Bailey Banks & Biddle;

2) A notarized Affidavit executed by an agent of Citibank, N.A. dated June 22, 2012, identifying the Debtor as the account holder by name and the last four digits of his social security number, and indicating, among other things, the account was opened by the Debtor on June 22, 2007 and sold to Portfolio Recovery on January 27, 2012 with an outstanding balance of $1,721.16;

3) An executed Bill of Sale and Assignment dated January 27, 2012 between Citibank, N.A. and Portfolio Recovery, referencing a purchase and sale agreement and exhibit describing the account which were not attached; and

4) A notarized Affidavit Regarding Consumer Account Purchase dated May 16, 2012 executed by a representative of PRA Receivables Management, LLC as the an agent of Portfolio Recovery, which states the account ending in "2243" due and payable from the Debtor was sold and transferred to Portfolio Recovery.[60]

---

[59]  This finding does not automatically warrant the disallowance of the proofs of claim. Rather, the insufficiency of a proof of claim merely affects the burdens of proof between the parties.

[60]  Amended Proof of Claim No. 9-2.

The Debtor scheduled a debt to "Bb And B/cbna" in the amount of $1,764.00 for a "Credit card account opened 6/07" for an account ending in "2243." Through sworn affidavits, Portfolio Recovery has specifically identified the Debtor, the same account, and the same date the account was opened. Portfolio Recovery also provided a specific amount due within $100 of the scheduled debt. Portfolio Recovery provided sworn statements indicating the account was acquired post-petition from Citibank, N.A., the original holder of the debt from the time the account was opened. Most importantly, Portfolio recovery attached the actual assignment documents to its proof of claim. Accordingly, the Court concludes Amended Proof of Claim 9-2 complies with the requirements of FED. R. BANKR. P. 3001 and Official Form 10, thereby constituting *prima facie* evidence of the validity and amount of Portfolio Recovery's claim against the Debtor. The Debtor has not provided any evidence to rebut this presumption.

In connection with this conclusion, the Court agrees with the Trustee that the Debtor's Verified Motion to Disallow Proof of Claim 9-1 is mooted by the filing of Amended Proof of Claim No. 9-2. The Debtor only raised two objections to this claim, lack of documentation and standing. Portfolio Recovery has not only provided adequate documentation under the Bankruptcy Rules, but through the same documentation has demonstrated its standing as a creditor holding a claim against the Debtor. The Debtor has not provided sufficient evidence to rebut the presumption of the validity and amount of Amended Proof of Claim No. 9-2, and the may not avoid paying a debt he cannot in good faith disavow. Accordingly, the Court shall deny the Debtor's Verified Motion to Disallow Proof of Claim 9-1 as moot.

The law demands this result because Portfolio Recovery amended its claim before its original claim was disallowed and has indeed established its right to payment as the assignee/creditor. However, the Court remains concerned Portfolio Recovery never responded to the Debtor's Verified Motion to Disallow Proof of Claim 9-1, and is reaping the benefit of the Trustee's opposition to the Debtor's motion. There is no question the Trustee's response bought additional time for Portfolio Recovery to amend its claim. If the Trustee had not opposed the Verified Motion where the creditor failed to do so, the end result would have been disallowance of the claim. In any event, Portfolio Recovery beat the clock, and its Amended Proof of Claim No. 9-2 will be allowed.

## C.   Disallowing Claims For Failure to Attach Documentation and the *Reynolds* Opinion

An objecting party may raise a basis for disallowing a claim under § 502(b), which provides nine separate grounds for disallowing a proof of

claim.[61]  Courts are divided on the issue of whether § 502(b) provides the exclusive grounds for disallowance of claims.  The Tenth Circuit takes the minority "nonexclusive" view of § 502(b), and in *Kirkland*, established a rule wherein a claim could be disallowed solely on the basis that the creditor failed to attach documentation to its proof of claim.[62]

However, in the recent *Reynolds* decision, Chief Judge Howard R. Tallman determined reliance on *Kirkland* (lack of attaching supporting documentation) **as the sole grounds** to disallow a claim is no longer appropriate given the recent changes to FED R. BANKR. P. 3001.[63]  After *Reynolds*, a claimant's failure to attach supporting documentation to a proof of claim subjects the claimant to the evidentiary sanction of being barred from presenting documents at a subsequent evidentiary hearing on the disputed claim.  *Reynolds* does not preclude a party in interest from asserting a *Kirkland* based objection when the party objects for lack of supporting documentation in conjunction with an additional substantive objection under § 502(b).  This Court agrees with and previously adopted the analysis and holding in *Reynolds*.

In the wake of *Reynolds*, this Court is compelled to address the impact of the decision, given the increased volume of objections to debtors' motions to disallow unsecured claims filed, not by the actual claimants, but by the Chapter 13 trustees.  In *Reynolds*, five creditors filed separate proofs of claim each based on written credit card agreements.[64]  The Court held none of the five proofs of claim complied with the requirement stated in FED. R. BANKR. P. 3001(c)(1) to attach the writing upon which the claim is based.[65]  The Court also noted none of the affected creditors filed responses, nor did any other party.[66]

The debtors subsequently filed five verified motions to disallow the claims, each identifying the creditor (or successor in interest to the creditor) as initially

---

[61]  *See* § 502(b)(1)-(9).

[62]  *See Kirkland*, 572 F.3d 838.  For a more detailed discussion of the differences between the "exclusive view" and the "nonexclusive view" of § 502(b), *see In re Pursley*, 451 B.R. at 226-29.

[63]  *See In re Reynolds*, 470 B.R. 138 (Bankr. D. Colo. 2012).

[64]  *Id.* at 140-141 ("The attachments to the filed claims do not purport to be the written agreements upon which the debts are based.  Instead, all five claims are accompanied by account summaries. The summaries differ in format but the differences are not material.").

[65]  *Id.* at 141.

[66]  *Id.*

identified on Schedule F.  The debtors did not schedule any of the five debts as contingent, unliquidated or disputed.  Relying on *Kirkland*, the debtors' sole objection to each claim was "the creditors had failed to attach documentation to their proofs of claim in compliance with Fed.R.Bankr.P. 3001(c)(1)."[67]

In light of the recent revisions to Rule 3001, effective December 1, 2011, the Court examined whether *Kirkland* continues to control the issue of whether claim disallowance is an allowable sanction under FED. R. BANKR. P. 3001(c)(2)(D) for a creditor's failure to comply with the documentation requirement.[68]  The Court held the addition of the phrase "other appropriate relief" in FED. R. BANKR. P. 3001(c)(2)(D) cannot be interpreted to include claim disallowance as an appropriate remedy.[69]  Ultimately, the Court determined *Kirkland* no longer controls the issue, and found the debtors had failed to state cognizable grounds for disallowance of the claims at issue and it allowed the claims.

The *Reynolds* Court stated "revised Rule 3001 makes it clear that a creditor who fails to fully comply with the documentation requirements of Rule 3001(c), primarily faces the *evidentiary* sanction of being precluded from introducing its documents at a subsequent hearing on a substantive objection to its proof of claim under § 502(b)."[70]  The implication of *Reynolds* is bankruptcy courts will not automatically grant motions to disallow claims based solely on lack of supporting documentation.  However, if a party objects to a proof of claim for lack of supporting documentation in conjunction with at least one other substantive objection, **at an evidentiary hearing on the substantive § 502(b) objection**, the creditor filing the claim would still need to satisfy its evidentiary burden of proving the claim.  The *Reynolds* Court expressly stated a proper remedy for the creditor's failure to comply with FED. R. BANKR. P. 3001(c) is for the court to preclude the creditor from introducing its documents at the hearing.[71]

---

[67]  *Id.* at 140.

[68]  *See id.* at 142-145.

[69]  *Id.* at 145.

[70]  *Id.*

[71]  *Id.*  The *Reynolds* Court further held even if this were not the case, Chapter 13 debtors who had scheduled a creditor's claims as undisputed in amounts consistent with the same creditors' proofs of claim were judicially estopped from seeking to disallow these claims solely for a lack of supporting documentation.  *Id.* at 145.  The Court reasoned debtors are responsible for their sworn statements made in their schedules, and the "doctrine of judicial estoppel prevents the Debtors from now denying liability for their scheduled debts."  *Id.*  Although the Court relied primarily on FED. R. BANKR. P. 3001(c)(2)(D)

On June 19, 2012, the debtor filed a motion to reconsider the *Reynolds* opinion.  In denying the motion to reconsider, the Court, *inter alia*, provided the following explanation of its decision:

> The Court's [opinion in *Reynolds* allowing claims] focused on the narrow, purely legal, question of whether, in the absence of any substantive objection going to the amount or validity of the claim, a creditor's claim may be disallowed on account of its failure to attach complete documentation to its proof of claim in accordance with FED. R. BANKR. P. 3001(c)(1).  Prior to the revision of Rule 3001, effective December 1, 2011, the Tenth Circuit Court of Appeals had answered that question in the affirmative. *Caplan v. B-Line, LLC (In re Kirkland)*, 572 F.3d 838, 840-41 (10th Cir. 2009).  Consequently, the question before the Court was to what extent, if any, the December 1, 2011, revisions to Rule 3001 affect the continued viability of the *Kirkland* decision with respect to that narrow issue. . . . The form of the Debtors' claim objections required the Court to focus solely on the legal issue concerning non-compliance with Rule 3001(c)(1) as that was the only basis for disallowance stated in each objection.

> The Debtors discuss difficulties involved in the assignment of claims. The Court recognizes that the emergence of entities that buy large numbers of bankruptcy claims causes debtors difficulty at times in reviewing the filed claims and tracing a particular claim back to an original creditor. In this particular case, those identification problems were not presented as the Debtors' claim objections identified the manner in which each of the debts was originally scheduled.[72]

The *Reynolds* Court went on to state its decision is limited to construction of the current version of FED R. BANK. P. 3001.  With another proposed change to Rule 3001 on the horizon, expected to take effect on December 1, 2012 absent congressional action, the Court further stated:

> It appears that the drafters of the Bankruptcy Rules are also concerned with the problem of a debtor's ability to match up the creditor with whom the debtor incurred the obligation and a subsequent owner of the debt who files a claim in a bankruptcy case.

---

for its holding, the Court stated **if** it was deciding the case "under judicial estoppel principles, it would be appropriate to allow the creditor claims only in the amounts scheduled by the Debtors." *Id.* at 148.  This reasoning is sound in situations where the creditor filing the proof of claim is the exact same creditor scheduled by the debtor.

[72] *In re Reynolds*, Case No. 11-30984-HRT, Order on Motion to Reconsider, Docket No. 63, at p.1-2 (Bankr. D. Colo. July 31, 2012).

Absent contrary congressional action, another revision to Rule 3001 takes effect on December 1, 2012. The coming revision will address that problem directly and also largely render the current discussion moot. The future revision adds a new Rule 3001(c)(3) applicable specifically to open-ended credit agreements like the claims at issue here. It will remove open-ended credit agreements entirely from the Rule 3001(c)(1) documentation requirement and substitute a requirement specifically tailored to open-ended credit arrangements. The claimant will be required to provide a statement that, among other information, provides the name of the entity from whom the creditor purchased the account and the name of the entity to whom the debt was owed at the time of the debtor's last account transaction.[73]

The holding of *Reynolds* applies to the instant matter, but the application of that holding requires additional analysis in this case on three critical points. First, in *Reynolds*, the creditors filing claims were the same creditors identified on the debtor's Schedule F. Here, Oak Harbor does not appear anywhere on the Debtor's Schedule F. The Debtor alleges Oak Harbor fails to demonstrate it is the holder of the debt because Oak Harbor failed to attach documentation to its proof of claim.

Second, in *Reynolds*, the Court noted the debtor had failed to make a substantive objection under § 502(b). Here, the Debtor argues Oak Harbor is not the real party in interest and lacks standing to file the claim, and as a result, Proof of Claim No. 3-1 is unenforceable against the Debtor under § 502(b). The objection to standing was raised in addition to the objection for failure to attach documentation. The Trustee argues a challenge to standing is not a substantive objection.[74]

Finally, the *Reynolds* decision did not address the issue of assigned claims and what documents, if any, should be attached to a proof of claim filed by an alleged assignee to establish standing as the claimant. As the *Reynolds* Court explained in its order denying the motion to reconsider, the debtor did not raise that argument. Here, the Debtor has challenged standing of Oak Harbor as the alleged assignee claimant. Therefore, the holding of *Reynolds* is applicable to the instant matter, but this Court must go a step further to address the issue of whether an objection to standing is a substantive objection under § 502(b).

---

[73] *Id.* at p.3 (citing Fed. R. Bankr. P. 3001(c) (Westlaw) [*Text of subdivision (c) effective December 1, 2012, absent contrary Congressional action.]*).

[74] This argument will be addressed in Section D., *infra*.

**D.      An Objection to the Standing of a Claimant that Filed a Proof of Claim is a "Substantive Objection" Under 11 U.S.C. § 502(b).**

After *Reynolds*, an objection to a claim based solely on lack of documentation is not a substantive objection under § 502(b) for disallowance of the claim.  However, the analysis does not end there.  It is undisputed the Debtor also objected to the standing of Oak Harbor to file its proof of claim, in addition to the Debtor's objection to Oak Harbor's failure to attach proper documentation.  At issue is whether the Debtor's objection to standing constitutes a substantive objection under § 502(b).

The Court determines a challenge to the standing of a claimant is a substantive objection under § 502(b)(1), which provides a claim may be disallowed to the extent the claim is unenforceable against a debtor under any applicable law, including state law.[75]  With respect to standing, "[a]n allegation essential to any claim is that the claimant is the proper party in interest; regarding assignments, one essential allegation is that the claimant can prove its assignment under state law."[76]

This Court is not alone in determining a challenge to standing is a substantive objection under § 502(b)(1).  In support of this conclusion, the U.S. Bankruptcy Court for the Northern District of Oklahoma explained:

> Debtors also allege that **they have no liability on the claims as filed because Claimants have not proven they are the owners of the claims with a right to payment**; that even if Claimants own the subject claims, Debtors dispute the amounts asserted in the proofs of claim; and that such claims are not enforceable under Oklahoma law.  These objections are sufficient to prevent the claims from being deemed allowed under § 502(a), and to trigger Court determination of the claims under § 502(b)(1).
>
> . . .
>
> In the face of a substantive objection by a party in interest, the Court is required to determine the amount of each claim as of the petition date, and to allow the claim in that amount, except to the extent the claim is unenforceable against the debtor or the debtor's property under applicable law.  **Claimants therefore must first establish**

---

[75]  *See* § 502(b)(1).

[76]  *Pursley*, 451 B.R. at 232.

**that they hold enforceable claims against the respective Debtors**.[77]

This Court holds a challenge to standing is a substantive objection under § 502(b)(1) because if a claimant has not proven it is the owner of a claim with a right to payment (i.e the party with standing), the claim is unenforceable against the debtor under state law.[78]  Accordingly, the Debtor has raised a sufficient substantive objection to Oak Harbor's claim under § 502(b).

With respect to Proof of Claim No. 3-1, the Debtor has asserted Oak Harbor is not the real party in interest.   Whether the Trustee has any evidence to prove the validity of the claim filed by Oak Harbor remains to be seen.   To date, such evidence has not been provided to the Court.  Given the lack of any documentary evidence attached to its proof of claim, the Court cannot determine if Oak Harbor has standing.  As such, the Court determines an evidentiary hearing is necessary to determine whether Proof of Claim No. 3-1 should be disallowed.

The Trustee has put himself in the awkward position of having to defend Proof of Claim No. 3-1.  In order for this claim to stand, the Trustee, as the only responding party, shall bear the initial burden at an evidentiary hearing of establishing Oak Harbor holds an enforceable claim against the Debtor and the amount of the claim.[79]   Oak Harbor failed to comply with the Federal Rules of Bankruptcy Procedure, failed to attach any evidence of its claim or the assignment of the claim, and most importantly, failed even to respond to the

---

[77] *In re Cleveland*, 396 B.R. 83, 93-94 (Bankr. N.D. Okla. 2008) (emphasis added); *see also In re O'Brien*, 440 B.R. 654.  Moreover the court in *Pursley*, 451 B.R. at 231-32, stated:

> To start, it *is* a substantive objection if a party claims not to owe money to another party; that goes directly to the validity of the claim.  It is not enough "that the debtor owes someone money; the issue is whether the debtor (and hence the bankruptcy estate) owes it to the party filing the proof of claim." *In re King*, 2009 WL 960766, at * 5 (Bankr. E.D. Va. 2009).

[78] Although the Court believes a challenge to an assignee claimant's standing is a legal issue sufficient to rebut the presumption of validity of a proof of claim,  the Court need not reach this issue because it determined Oak Harbor is not entitled to the presumption of a prima facie valid claim.  *See In re DePugh*, 409 B.R. 84, 116 (Bankr. S.D. Tex. 2009) ("Further, because [alleged creditor's] claims have allegedly been assigned to it, proof of the assignments must also be provided to have standing.  For all of these reasons, [the alleged creditor] has failed to meet its initial burden of production with regards to original proofs of claim.").

[79] *Broadband Wireless*, 295 B.R. at 145.

Debtor's Verified Motion to Disallow Proof of Claim 3-1.  Under the holding in *Reynolds* and pursuant to FED. R. BANKR. P. 3001(c), the Court determines the appropriate remedy for Oak Harbor's failure to attach any documentation to its proof of claim is to preclude the introduction of documents at the evidentiary hearing.  In addition, due to its failure to timely respond to the Verified Motion to Disallow Proof of Claim 3-1, Oak Harbor is prohibited from independently participating at the evidentiary hearing.

## E.    Debtor's Motion to Strike

The Debtor's Motion to Strike seeks entry of an order striking only the Claim 3-1 Supplemental Response because the Trustee failed to file one of the two pleadings indicated in the Court's Minutes of Proceeding dated July 12, 2012.  The Debtor also argues the Court should strike the Claim 3-1 Supplemental Response, pursuant to FED. R. CIV. P. 12(f), as redundant and immaterial.[80]

Pursuant to FED. R. BANKR. P. 7012(b), "Rule 12(b)-(i) F.R.Civ.P. applies in adversary proceedings."  The instant dispute is a contested matter, not an adversary proceeding.  Contested matters are governed by FED. R. BANKR. P. 9014.[81]  FED. R. BANKR. P. 9014(c) triggers the application of certain rules from Part VII of the Federal Rules of Bankruptcy Procedure that are generally applied to adversary proceedings.  The list of applicable rules for contested matters does not include Rule 7012.[82]  Even if the rule did apply, the Court finds the Trustee's Claim 3-1 Supplemental Response is not redundant or immaterial because the supplemental pleading addresses the standing argument not addressed in the Trustee's original Response, which goes to the heart of the disputed issue between the parties (whether the objection to standing is a substantive objection to the claim).  Thus, the Debtor's requested relief with respect to FED. R. CIV. P. 12(f) fails as a matter of law because the rule is inapplicable.

Moreover, even if the Court were to consider the Debtor's Motion to Strike as a request for equitable relief, the Supplemental Responses were timely filed and the Debtor has not alleged or demonstrated any prejudice suffered.  The Debtor relies solely on a procedural argument, and while it is true the Trustee did not file one of the two specific pleadings set forth in the Court's Minutes of

---

[80]  FED. R. CIV. P. 12(f), as incorporated by FED. R. BANKR. P. 7012, provides in pertinent part "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

[81]  FED. R. BANKR. P. 9014(a).

[82]  *See* FED. R. BANKR. P. 9014(c).

Proceeding, the equities weigh in favor of hearing this contested matter on the merits.[83]  Therefore, the Court concludes the Debtor's Motion to Strike should be denied.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED the Verified Motion to Disallow Proof of Claim 9-1 filed at Docket No. 47 is DENIED as moot because Amended Proof of Claim No. 9-2 resolves the Debtor's objections for lack of attaching documentation and standing.

IT IS FURTHER ORDERED the Court shall hold an evidentiary hearing on the Verified Motion to Disallow Proof of Claim 3-1, the Trustee's Response to Verified Motion to Disallow Proof of Claim No. 3-1 , the Reply, and the Claim 3-1 Supplemental Response, to determine whether the claim should be disallowed. Under the holding in *Reynolds* and pursuant to FED. R. BANKR. P. 3001(c), the Court determines the appropriate remedy for Oak Harbor's failure to attach any documentation to its proof of claim is to preclude the introduction of documents at the evidentiary hearing.  In addition, due to its failure to timely respond to the Verified Motion to Disallow Proof of Claim 3-1, Oak Harbor is prohibited from independently participating at the evidentiary hearing.

IT IS FURTHER ORDERED the evidentiary hearing in this matter shall be scheduled by separate order.

IT IS FURTHER ORDERED the Debtor's Motion to Strike filed at Docket No. 85 is DENIED.

Dated August 29, 2012                    BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[83]  The Court is mindful of the Tenth Circuit's preference for determining matters on their merits. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) ("The preferred disposition of any case is upon its merits . . . ."); *see also Gatrell v. City and County of Denver*, 2012 WL 219434, *1 (D. Colo. January 23, 2012) (noting the judicial system's strong preference for resolving cases on their merits).